# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JOSEPH STEWARD,

        Petitioner,               Case Number: 2:08-CV-12796

v.                                 HONORABLE DENISE PAGE HOOD

NICK LUDWICK,

        Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY

Petitioner Joseph Steward has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is presently incarcerated at the Pine River Correctional Facility in St. Louis, Michigan. In his application, Petitioner challenges his convictions for three counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b. Petitioner argues that an improper reference to a polygraph examination, prosecutorial misconduct, ineffective assistance of counsel, and sentencing errors render his incarceration unconstitutional. For the reasons set forth below, the Court denies the petition.

## I. Facts

Petitioner was charged with three counts of first-degree criminal sexual conduct arising from allegations by his stepdaughter that he sexually assaulted her repeatedly over a period of three years in Pontiac, Michigan. The first count involved allegations of penile penetration when the victim was less than 13 years old; the second count involved allegations of penetration with a foreign object when the victim was less than 13 years old; and the third count involved

allegations of penile penetration when the victim was between the ages of 13 and 15 and while a member of the same household as Petitioner. The prosecutor dismissed a fourth count of second-degree criminal sexual conduct.

Ms. McGee McGee testified that Petitioner engaged in intercourse with her in 2001, when she was 11 years old, and subsequently had intercourse with her on numerous occasions when other members of the household were absent or asleep. In addition, Ms. McGee testified that Petitioner placed sex toys inside her vagina when she was between the ages of 11 and 12. Ms. McGee further testified that Petitioner engaged in intercourse with her on July 23, 2004, when she was 14 years old.

Ms. McGee testified that she initially reported the allegations of sexual assault to her mother in July 2004. Approximately one month after this disclosure, Ms. McGee wrote a notarized letter recanting her allegations. Ms. McGee testified that she wrote the letter at the suggestion of her mother in order to reduce her mother's depression and stress. Ms. McGee also testified extensively about her relationship with her mother and her concern for her mother's well-being.

Alex Kytsac testified that he and Ms. McGee were friends and that she confided in him regarding a grave matter. He testified that he made Ms. McGee promise to tell someone what she had told him. Tiffany Wilson, another friend of Ms. McGee's from school, gave similar testimony. Neither Mr. Kytsac nor Ms. Wilson were permitted to testify about the specific details of their conversations with Ms. McGee.

Catherine Connell testified as a forensic expert on child victims of sexual abuse. Ms. Connell testified about the circumstances that cause children to recant their initial allegations of

sexual assault, explaining that children often falsely recant allegations because of pressures placed upon them by members of the household. While Ms. Connell personally interviewed Ms. McGee, the substance of her testimony addressed child victims of sexual assault in general, rather than Ms. McGee's specific allegations of abuse.

Rita Pierce, a social worker employed by the state of Michigan, testified that she counseled Ms. McGee for multiple sessions following the claims of sexual abuse. Ms. Pierce also testified about the circumstances surrounding Ms. McGee's recantation letter, including her meetings with other members of Ms. McGee's household. Ms. Pierce indicated her belief that Ms. McGee wrote the letter at the urging of her mother, Michelle Steward.

Dr. Ann Marsh testified that she physically examined Ms. McGee at St. Joseph's Hospital regarding the sexual assault. Dr. Marsh testified that she was unable to determine whether Ms. McGee had ever engaged in sexual intercourse, although Dr. Marsh believed that Ms. McGee had an infection associated with sexual activity.

Defense counsel called three witnesses. Petitioner's mother, Bonnie Steward, testified that she lived in the same household as Ms. McGee and Petitioner for several years, and that she never noticed any inappropriate behavior between Ms. McGee and Petitioner. Petitioner's brother, Michael Steward, lived in the household for most of 2000. He testified that he never noticed any inappropriate behavior between Ms. McGee and Petitioner. Similarly, Petitioner's stepmother, Shannon Steward, testified that she visited the household about once each month and noticed no inappropriate behavior.

## II. Procedural History

Petitioner was convicted of three counts of first-degree criminal sexual conduct following

a jury trial in Oakland County Circuit Court. On May 26, 2005, Petitioner was sentenced to three concurrent prison terms of 17 years, 6 months to 50 years' imprisonment.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following four claims:

> I. Joseph Steward was denied both federal and state due process and a fair trial where one key prosecution witness (a state protective service worker) made reference in her testimony to . . . a polygraph Michelle Steward (alleged victim's mother) was asked to take with a clear negative response or implication, being that she refused the lie detector test or failed same.
>
> Reversible error resulted from the prosecutor's misconduct in eliciting this polygraph reference/testimony intentionally and while knowing it to be critically prejudicial evidence which was just as obviously inadmissible against Mr. Steward. The court reversibly erred by simply giving an instruction to disregard the evidence rather than ordering a mistrial and Joseph Steward was thereby denied his federal and state constitutional rights to due process, a fair trial and a miscarriage of justice resulted. US Const, Ams 5 & 14; Const 1963, Art 1, § 17.
>
> II. Joseph Steward was denied his right to federal and state due process and a fair trial through ongoing flagrant prosecutor misconduct. The individual acts of misconduct set forth in this argument alone and/or in combination . . . with the misconduct noted in Argument I . . . . constitutes/results in a miscarriage of justice . . . and reversible error.
>
> III. Mr. Steward was denied his right to effective assistance of counsel and federal due process/a fair trial as . . . the failure to act or serious mistakes made by his trial attorney which could not be considered trial strategy; if trial strategy, the same was not objectively reasonable in any sense and resulted in the likely conviction of an innocent person and a miscarriage of justice.
>
> IV. Mr. Steward must be resentenced where his sentence guidelines were mis-scored (incorrect) and where his sentence was also increased based on facts neither proven to the jury beyond a reasonable doubt nor admitted by him in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. (see *Blakely/Booker*)

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Steward*,

No. 263941 (Mich. Ct. App. Jan. 23, 2007).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, making the same claims presented to the Michigan Court of Appeals with the following addition to his sentence-related claims:

> The presumptive nature of Michigan's sentencing guidelines violates a criminal defendant's federal constitutional right to due process, trial by jury, and presumption of innocence under US Const Ams V, VI, and XIV. Based on the resulting miscarriage of justice Mr. Steward's sentence must be corrected, he must be resentenced.

The Michigan Supreme Court denied leave to appeal. *People v. Steward*, 478 Mich. 929 (2007).

Petitioner then filed the pending petition for a writ of habeas corpus, making the same claims presented to the Michigan Court of Appeals.

### III. Standard of Review

Petitioner's claims are reviewed against the standard imposed by 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in State court proceedings.

28 U.S.C. § 2254(d).

5

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). An "unreasonable application" of federal law occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. Possible error by the state court is not sufficient to justify granting the habeas petition; the state court's application of federal law "must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). The fact that a state court erroneously or incorrectly applied clearly established federal law does not, by itself, mandate the issuance of a writ; "[r]ather, that application must also be unreasonable." *Id.* at 411. In addition, "a determination of a factual issue made by a state court shall be presumed to be correct." 28 U.S.C. § 2254 (e)(1).

### IV. Analysis

### A. Lie Detector Reference

Petitioner first argues that he was denied a fair trial as a result of Rita Pierce's reference to a polygraph examination. Pierce, a social worker who counseled Ms. McGee, testified that she temporarily removed the Steward children from the household pending an investigation into the allegations of sexual abuse:

| | |
|---|---|
| Prosecutor: | So that's the process once you remove them. What - why did you come to the conclusion that it was appropriate to remove Felicia and her brother and sister from the custody of their mother? |
| Pierce: | It was my belief that Felicia was coerced into writing the letter. |

6

| | | |
|---|---|---|
| Prosecutor: | And what did you use for the basis of your opinion? | |
| Pierce: | After speaking with the mother and her not - basically she was asked to take a lie detector test about - | |
| Defense counsel: | Objection, your Honor. | |

\*\*\*

| | |
|---|---|
| The Court: | Ladies and Gentlemen of the Jury, you just heard some testimony about a lie detector test. I'm going to strike that testimony. It doesn't have any relevance to this case. It should absolutely have no bearing on your decision in this case. I want you to entirely disregard it. That's my instruction to you. Thank you. |

Tr. Vol. IV at 42-43.

The Michigan Court of Appeals rejected Petitioner's claim, stating:

> The reference may have negatively impacted the credibility of the complainant's mother, who testified that she did not influence the complainant to write a recantation letter. But the trial court did not admit results of a polygraph examination if one actually occurred. And, the jury was not aware of the existence of polygraph results indicating deception from the complainant's mother. The record shows that the prosecutor did not elicit the response, and the reference was inadvertent and isolated to one instance. The reference's potential for a negative impact was not significant and defendant was not prejudiced to the extent he was denied a fair trial. As a result, the trial court did not err in failing to order a mistrial.

*Steward*, slip op. at 2.

In *Maldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005), the Sixth Circuit Court of Appeals affirmed the denial of a habeas petition raising, *inter alia*, a claim that the petitioner's right to a fair trial was violated when testimony regarding a witness's truth test was admitted. In *Maldonado*, a police officer testified that a prosecution witness gave several conflicting stories to police regarding the defendant's involvement in the murder. The police officer testified that he believed the witness's third statement which incriminated defendant because the witness "was

7

tested." *Id.* at 474. The Sixth Circuit noted that "[t]he Supreme Court has never held that statements implying the results of a polygraph or similar test render the defendant's trial fundamentally unfair, in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments." *Id.* at 477. Because no Supreme Court precedent requires the exclusion of testimony about truth tests, the Sixth Circuit held that the state court's decision holding that admission of truth test testimony did not violate the defendant's due process rights was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

Similarly, in this case, the Michigan Court of Appeals' decision cannot be said to be contrary to or an unreasonable application of clearly established Supreme Court precedent where no Supreme Court precedent exists requiring the exclusion of such testimony. Following reference to the polygraph examination, the prosecutor immediately proceeded with a different line of questioning and the jury was not informed of the polygraph examination results. The trial court's jury instruction to disregard the brief reference to the polygraph examination resolved any potential trial problems. "A jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

### B. Alleged Prosecutorial Misconduct

Petitioner next argues that the prosecutor engaged in additional instances of misconduct, thereby violating his due process right to a fair trial. Specifically, Petitioner alleges that the prosecutor committed the following acts of misconduct: 1) allowed Tiffany Wilson to improperly vouch for Ms. McGee's claims; 2) asked Mr. Kytsac whether he believed Ms. McGee's claims; 3) improperly vouched for Ms. McGee through the testimony of Rita Pierce; 4) allowed Rita Pierce to state her opinion that Ms. McGee had been coerced into writing the

8

recantation letter; 5) asked Ms. McGee about a Mother's Day gift; 6) elicited testimony from Ms. McGee that the recantation letter was suggested by defense counsel; 7) improperly referenced testimony not in evidence during closing argument; and 8) elicited testimony about a polygraph examination.

Respondent argues that most of Petitioner's claims are procedurally defaulted because defense counsel failed to object at trial. When considering habeas petitions, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of Petitioner's prosecutorial misconduct claims.

Prosecutors may not use "improper methods calculated to produce a wrongful conviction." *United States v. Young*, 470 U.S. 1, 7 (1985) (citing *Berger v. United States*, 295 U.S. 78, 88 (1935)). Claims of prosecutorial misconduct may result in habeas relief only if the improper statements "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Furthermore, "[c]laims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). In order to warrant relief, the prosecutor's misconduct must be so improper and flagrant as to result in a fundamentally unfair trial. *Johnson v. Bagley*, 544 F.3d 592, 596 (6th Cir. 2008). The Sixth Circuit applies a four-factor

test to inappropriate prosecutorial conduct to determine if relief should be granted: "(1) whether the evidence against the defendant was strong; (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally." *Slagle v. Bagley*, 457 F.3d 501 (6th Cir. 2006). The habeas court must consider "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

The Michigan Court of Appeals denied relief for the first four claims of prosecutorial misconduct in conclusory fashion, holding in relevant part:

> Defendant primarily complains of alleged improper testimony solicited by the prosecutor from witnesses who defendant claims improperly opined on whether they believed the complainant's allegations. A lay witness may not give an opinion on the believability of the complainant's allegations, *People v. Smith,* 425 Mich. 98, 113; 387 N.W.2d 814 (1986), because the jury has the sole authority to determine whether a particular witness was credible. *People v. Buckey*, 424 Mich. 1, 17; 378 N.W.2d 432 (1985). Further, a witness is not permitted to comment on the credibility of another witness. *Id.*
>
> While a review of the record reveals that some of the challenged testimony may have been improper, the prosecutor elicited testimony from an expert to explain the generalities found within sexually abused children to explain why children recant, and to explain the circumstances that lead to such recanting. The complainant testified in depth, and the jury had an opportunity to view her demeanor and assess her credibility first hand to determine whether her circumstances were consistent with those circumstances discussed by the expert witness. Moreover, any prejudicial effect could have been cured by a contemporaneous instruction. . . .

*Steward*, slip op. at 3.

Although the Michigan Court of Appeals analyzed these claims under the plain error standard, the decision is sufficiently thorough to constitute a reasoned adjudication on the merits within the meaning of 28 U.S.C. § 2254(d). This Court therefore reviews the decision under

AEDPA's deferential standard of review. *Fleming v. Metrish*, 556 F.3d 520, 531-32 (6th Cir.2009); compare with *Benge v. Johnson*, 474 F.3d 236, 246-47 (6th Cir. 2007) (where state court's plain error review did not amount to adjudication on the merits federal habeas court employs *de novo* review) and *Maples v. Stegall*, 340 F.3d 433, 436-37 (6th Cir. 2003).

First, Petitioner argues that Tiffany Wilson and Alex Kytsac were allowed to improperly vouch for Ms. McGee's claims. Tr. Vol. I at 156. Ms. Wilson testified that she believed Ms. McGee was honest regarding the matter the two discussed. Mr. Kytsac testified that nothing Ms. McGee did caused him to doubt her truthfulness. Tr. Vol. I at 156.

Vouching "occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness," or through "comments that imply that the prosecutor has special knowledge of facts not in front of the jury." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999). Ms. Wilson's testimony was given in response to a question asked by defense counsel on cross-examination. Her statement was not the result of any action by the prosecutor. Therefore, Ms. Wilson's allegedly improper testimony was not caused by prosecutorial misconduct. *See, e.g.*, *Kelly v. Trombley*, No. 05-cv-71124, 2006 U.S. Dist. LEXIS 73023, *34 (E.D. Mich. Oct. 6, 2006) (holding that testimony elicited by defense counsel is not prosecutorial misconduct). Mr. Kytsac's statement that he believed Ms. McGee was isolated and was not prejudicial to Petitioner given the strength of the overall evidence at trial. Additionally, defense counsel cross-examined Mr. Kytsac on his possible bias in favor of Ms. McGee. Petitioner has not established that Mr. Kytsac's testimony violated his due process rights to a fair trial.

Petitioner next argues that the prosecutor improperly vouched for the veracity of Ms.

McGee's claims through the testimony of Rita Pierce:

> Prosecutor: Have you had kids that have recanted and an investigation revealed that in fact it did not happen?
>
> Pierce: No.
>
> Prosecutor: Have you had cases where kids have recanted and evidence has come forward and showed that in fact it did happen?
>
> Pierce: Yes.

Tr. Vol. IV at 39.

The prosecutor did not express his personal belief about the truthfulness of Ms. McGee's testimony. In addition, the prosecutor did not imply knowledge of facts not presented to the jury. The prosecutor permissibly asked the witness about her fifteen-year professional experience with alleged child sexual assault victims who recant their initial allegations. *See Bixler v. Bell*, No. 06-cv-94025, 2007 U.S. Dist. LEXIS 94025 *12 (Dec. 26, 2007) (stating that such testimony is not "improper vouching, but rather the elicitation of testimony from an individual who is experienced in assessing whether or not a person is a victim of sexual assault").

Fourth, Petitioner argues that Pierce improperly testified she believed that Michelle Steward had coerced Ms. McGee into writing the recantation letter:

> Prosecutor: What was another basis for your conclusion that the children should be removed?
>
> Pierce: I did not - it was my belief that the child was coerced into writing this letter by the mother and that she was interfering with the investigation and that the child was - the child was not safe with her.

Tr. Vol. IV at 42-43.

The prosecutor's question probed the reason for the social worker's decision to temporarily place the Steward household children in foster care. This testimony is proper. *See Baker v. Warren*, No. 07-cv-11065, 2010 U.S. Dist. LEXIS 29588, at *11-12 (E.D. Mich. March 29, 2010) (explaining that a witness in a child sexual assault prosecution may testify regarding his or her reasons for removing the complainant from the household, even if the testimony goes to an ultimate issue in the case). Petitioner has failed to demonstrate that the Michigan Court of Appeals' rejection of this claim was contrary to clearly established federal law.

Fifth, Petitioner argues that the prosecutor elicited prejudicial testimony from Ms. McGee when he elicited testimony that she brought a Mother's Day gift to court for her mother. The trial court sustained defense counsel's objection after the testimony was heard by the jury. The Michigan Court of Appeals rejected this claim, holding that the question was incidental and did not significantly bolster Ms. McGee's testimony. The prosecutor extensively questioned Ms. McGee on her relationship with her mother, and a brief reference to her Mother's Day gift on redirect examination did not result in a prejudicial trial for the Petitioner. The motivation and cause for the recantation letter was an important issue at trial, and the prosecutor did not commit flagrant misconduct by responding to Petitioner's theory on cross-examination that the letter was truthful. Petitioner is not entitled to habeas relief based upon this claim.

Sixth, Petitioner argues that the prosecutor inappropriately elicited testimony from Ms. McGee that the recantation letter was suggested by Petitioner's trial counsel, thereby degrading the defense counsel:

> Felicia: Okay. [My mother] said she had talked to my step-dad the night prior and got some suggestions from the attorney and said that I needed to write a letter saying that it didn't happen.

13

> Prosecutor: Did she tell you why you needed to write the letter?
>
> Felicia: At the time she had wanted me to lie and say that none of this had ever happened.

Tr. Vol. III at 9-10.

The Michigan Court of Appeals found that the prosecutor did not directly solicit the response and that, because a curative instruction could have cured any prejudice, Petitioner was not entitled to relief. This isolated reference to defense counsel was clearly not purposefully solicited by the prosecutor. The conduct of the prosecutor in this regard therefore cannot be said to be improper. The state court's decision is neither contrary nor an unreasonable application of Supreme Court precedent.

Next, Petitioner argues that the prosecutor asserted facts not in evidence during closing argument by stating in part:

> You can also look at her consistency, the consistency of her testimony because common sense tells us that if you are consistent about what you say, you're more likely to tell the truth. . . If you think back to the testimony of Felicia, the only thing she was inconsistent about was the letter of recantation. The defense attorney did not present questions to her challenging her recollection of the sexual assaults. . .

Tr. Vol. IV at 118-19.

The Michigan Court of Appeals denied this claim holding that the claim was inaccurate. The Court of Appeals' conclusion that the prosecutor did not argue facts in evidence was reasonable.

Finally, Petitioner argues that the prosecutor committed misconduct by eliciting testimony referring to a polygraph examination. The Michigan Court of Appeals also held that the prosecutor did not intentionally elicit this testimony and, therefore, did not engage in

14

misconduct. The state court's holding is not an unreasonable application of established federal law.

Because Petitioner has failed to show that the allegations of prosecutorial misconduct resulted in an unfair trial or a denial of due process, Petitioner is not entitled to relief.

### C. Alleged Ineffective Assistance of Counsel

Petitioner next argues that defense counsel's failure to object to the above allegations of prosecutorial misconduct and failure to raise additional issues regarding the victim's physical condition resulted in ineffective assistance of counsel.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test that must be satisfied to find trial counsel ineffective. First, counsel's performance must be deficient. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. at 687. Second, counsel's deficient performance must prejudice the petitioner. A petitioner is prejudiced if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Habeas review of counsel's trial performance must be "highly deferential." *Id*. at 689. The habeas court must presume that the challenged action is sound trial strategy. *Id*. Trial counsel is not ineffective for failure to make pointless or futile objections. *See Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998).

For ineffective assistance of counsel claims related to allegations of prosecutorial misconduct, a petitioner must show that "the prosecutor's misconduct was plain enough for a minimally competent counsel to have objected." *Washington v. Hofbauer*, 228 F.3d 689, 698 (6th Cir. 2000). Counsel's failure to object is not ineffective where the prosecutor did not act

15

improperly. *Finkes v. Timmerman-Cooper*, 159 F. App'x 604, 611 (6th Cir. 2005).

The Michigan Court of Appeals held that counsel was not ineffective because the claims of prosecutorial misconduct were either baseless or failed to prejudice the petitioner:

> To establish a claim of ineffective assistance of counsel, a defendant bears a heavy burden. *People v. Cargin*, 463 Mich. 590, 599; 623 N.W.2d 884 (2001). Specifically, a defendant must show that, but for defense counsel's errors, there was a reasonable probability that the result of the proceeding would have been different. *Id.* at 600. In addition, there is a strong presumption that defense counsel's performance was sound trial strategy. *Id.*
>
> The majority of defendant's claims regarding ineffective assistance are without merit because failure to make a futile objection does not constitute ineffective assistance of counsel. *People v. Thomas*, 260 Mich. App. 450, 457; 678 N.W.2d 631 (2004). And while defense counsel's failure to object to some of the apparent improper opinion testimony concerning the credibility of the complainant may have been "objectively unreasonable," defendant has failed to establish that there is a reasonable probability that the result of the proceeding would have been different given all the testimony presented at trial.

*Steward*, slip op. at 4.

As discussed above, defense counsel objected to all instances of alleged prosecutorial misconduct, with the exception of Mr. Kytsac's testimony and Ms. McGee's statement regarding the recantation letter. The Michigan Court of Appeals concluded that Petitioner failed to establish a reasonable probability that the result of the trial would have been different had defense counsel objected to the challenged testimony. In both instances, the improper testimony was brief, and the prosecutor did not emphasize the statements to the jury. The errors did not prejudice Petitioner. Based upon the entirety of the evidence at trial, this Court concludes that the Michigan Court of Appeals' holding was not an unreasonable application of *Strickland*.

Petitioner also argues ineffective assistance of counsel because defense counsel failed to effectively cross-examine Dr. Marsh or request an additional medical expert. Dr. Marsh testified

16

that she was unable to determine whether Ms. McGee had been sexually assaulted.

The Michigan Court of Appeals, limiting its review to the record before it because the Petitioner failed to timely request an evidentiary hearing, held that it was valid trial strategy to accept Dr. Marsh's concession that she could not determine whether Ms. McGee had been sexually assaulted. A defense attorney's decision not to obtain further medical expert consultation for presentation at trial may be sound trial strategy where the attorney determines that the possibility of uncovering damaging testimony was an unwarranted risk. *Roush v. Burt*, 313 F. App'x 754, 760 (6th Cir. 2008). In this case, a second physical examination of Ms. McGee may have revealed evidence of sexual assault. Dr. Marsh's testimony, while not necessary exculpatory in this regard, was not incriminating. It was not unreasonable for defense counsel to determine that Dr. Marsh's neutral testimony was best left alone. The state court's decision was not contrary to or an unreasonable application of *Strickland.*

### D. Sentencing Claims

Finally, Petitioner argues that habeas relief is warranted because the state court erred in scoring his offense variables and his sentence was improperly based upon facts not admitted by him or determined by the jury.

It is well-established that "'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (*quoting Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Petitioner's argument that the state court erred in scoring his sentencing guidelines is based solely on the state court's interpretation of state law. It does not implicate any federal rights. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court

17

sitting on habeas review."); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("[S]tate courts are the ultimate expositors of state law."). "[A] claim that the trial court mis-scored offense variables in determining the state sentencing guidelines is not cognizable on habeas corpus review." *See Adams v. Burt*, 471 F. Supp. 2d 835, 844 (E.D. Mich. 2007); *see also Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999)(same); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987) (same). Therefore, habeas corpus relief is not available for this claim.

Petitioner also claims that the sentencing judge sentenced him based upon facts not found by a jury or admitted by him. In *Apprendi,* the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Michigan has an indeterminate sentencing system for most crimes, including first-degree criminal sexual conduct. The maximum term of imprisonment is set by law. *People v. Drohan*, 475 Mich. 140, 160-61 (2006).

In *Blakely v. Washington*, 543 U.S. 296 (2004), the Supreme Court addressed indeterminate sentencing systems and held that such systems do not violate the Sixth Amendment. The Court explained:

> [The Sixth Amendment] limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal right to a lesser sentence-and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail. In a system that punishes burglary with a 10-year sentence, with another 30 added for use of a gun, the

18

> burglar who enters a home unarmed is entitled to no more than a 10-year sentence-and by reason of the Sixth Amendment the facts bearing upon that entitlement must be found by a jury.

*Id.* at 308-09.

Judicial factfinding may not be used to impose a sentence "beyond the prescribed statutory maximum." *Apprendi*, 530 U.S. at 490. In this case, the sentencing court did not exceed the statutory maximum for Petitioner's crime. Therefore, the sentencing scheme did not run afoul of the Sixth Amendment. Because *Blakely* does not apply to indeterminate sentencing schemes like the one utilized in Michigan, the trial court's sentence did not violate the petitioner's constitutional rights. *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009).

## V. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the court concludes that reasonable jurists would not debate the court's conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the court will deny a certificate of appealability.

## VI. Conclusion

The petitioner has not shown he is incarcerated in violation of federal law as determined by the Supreme Court.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt # 1] is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: November 9, 2010

I hereby certify that a copy of the foregoing document was served upon Joseph W. Steward, Reg. No. 384884, Chippewa Correctional Facility, 4269 West M-80, Kincheloe, MI 49784 and counsel of record on November 9, 2010, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager